## PRUDENTIAL INS. CO. OF AMERICA v. LAND ESTATES, Inc.

### In re NOLLMAN.

### No. 376.

Circuit Court of Appeals, Second Circuit.

Aug. 5, 1935.

Pickett & Pickett, of Brooklyn, N. Y. (Walter H. Pickett, of Brooklyn, N. Y., of counsel), for petitioner-appellant.

Greenbaum, Wolff & Ernst and Stephen Callaghan, all of New York City (Phillip F. Seigenfeld and Callman Gottesman, both of New York City, of counsel), for respondents ancillary receivers.

Clark & Reynolds, of New York City, for plaintiff-respondent Prudential Ins. Co. of America.

Harry Rodwin, of New York City, for respondent rehabilitator of New York Title & Mortgage Co.

Henry M. Bellinger, of New York City, for defendant-respondent Land Estates, Inc.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The defendant, Land Estates, Incorporated, is the wholly owned subsidiary of the New York Title & Mortgage Company, a corporation in process of rehabilitation under the provisions of article 11 of the Insurance Laws of New York (Consol. Laws N. Y. c. 28, § 400 et seq.). On a creditor's bill filed in the District

Court for the Eastern District of New York against the defendant, ancillary receivers were appointed who are now in possession of premises upon which the appellant holds a mortgage. These premises are known as 7216 New Utrecht avenue, Brooklyn, N. Y.

In 1931 the New York Title & Mortgage Company, which will hereafter be called the Title Company, owned and foreclosed a $6,000 mortgage on this property. As a result of this action, Land Estates, Incorporated, acquired the title, whose validity is here unquestioned, for a consideration of $3,068.67 in cash and the execution and delivery by it on December 21, 1931, of a mortgage on the premises to the Title Company to secure a bond for the principal sum of $6,000 due December 21, 1934, together with interest at 6 per cent. per annum payable April 1, 1932, and semiannually thereafter.

On April 14, 1932, the Title Company transferred this bond and mortgage to the appellant, the general guardian of one Jay Alfred Nollman, an infant, in discharge of its obligations under another bond and mortgage then owned by the appellant as guardian. At the same time the Title Company delivered to the appellant its separate policy of guaranty by which for a valid consideration, consisting of a percentage of the interest reserved, it assumed liability for the performance of the terms of the bond and mortgage in accordance with the terms of its guaranty which are not all of importance now and will be outlined in due course so far as material.

On November 1, 1933, Land Estates, Incorporated, defaulted in a way to make the Title Company liable on its guaranty. Additional defaults occurred thereafter, none of which has been cured. Likewise the Title Company has defaulted and continued in default so as to give the appellant whatever remedy the guaranty entitles him to.

■ The only dispute here relates to that remedy. The appellant insists that it should have a deed of the premises without resorting to foreclosure and an accounting of the rents and profits since default. The defendant has been upheld in its contention that the appellant's remedy is by foreclosure.

The theory of the appellant's case is developed from the following facts: When he acquired the bond and mortgage from the Title Company, he was not informed and did not know that Land Estates, Incorporated, was its wholly owned subsidiary, but on the contrary believed that the mortgagor was an independent third party which had given a mortgage in which the Title Company had after investigation invested its own funds as a purchaser ordinarily would after being satisfied as to the value of the bond and mortgage, that this was a fraud perpetrated by the Title Company upon the appellant in which Land Estates, Incorporated, participated by virtue of its being the wholly owned subsidiary who had given the bond and mortgage, and that in equity the title to the mortgaged property was held in trust by Land Estates, Incorporated, for the benefit of the appellant to the extent of his interest as assignee of the mortgage.

This theory is amplified by a resort to the terms of the Title Company's guaranty. It was therein bound at its own expense to take all steps necessary to protect the rights of the appellant under the bond and mortgage, and the appellant was bound to refrain from acting until the Title Company had been given the time stipulated for the performance of its obligations. From this it is said to follow that the Title Company was bound to foreclose the mortgage in default, and, since its control of the mortgagee enabled it to get the title without foreclosure, Land Estates, Incorporated, should be compelled now to do what the Title Company could and should have already required it to do and transfer the title directly to the appellant.

It should be noted that what the appellant bought was not the property itself, but only a bond and mortgage on the property plus the Title Company's guaranty of the mortgagor's performance as agreed. There is no claim but that the mortgage is a valid mortgage upon the property which is as good security for the bond as though it had been executed, not by a wholly owned subsidiary of the Title Company, but by a third party previously without any connection whatever with the Title Company. The appellant is not complaining because he got less than he bargained for, but seeks to make capital

out of what he calls a fraud to avoid the necessity of foreclosure. Yet we need not express any opinion as to the merits of his claim of fraud. As will be seen, he must foreclose anyway before he is entitled to a deed.

If he is right in his claim of fraud, the mortgage executed by Land Estates, Incorporated, should be treated, not as a mortgage to the Title Company, but, disregarding the form as well as the plain intent of the mortgagor and mortgagee, should be given effect as a mortgage from Land Estates, Incorporated, directly to the appellant. Even so, the appellant would be a mortgagee who could reach the real estate itself only by foreclosure. In re Gilbert's Estate, 104 N. Y. 200, 10 N. E. 148. If he is wrong, Land Estates, Incorporated, and the Title Company are to be given their ostensible status of separate and distinct legal entities, from which it must inevitably follow that the appellant cannot be entitled to a deed without foreclosure. A similar situation was present in Prudential Ins. Co. v. Liberdar Holding Corporation (C. C. A.) 72 F.(2d) 395, 398 in respect to what was there called the parcels in class II, and we now adhere to that decision.

 The rents stand somewhat differently. In so far as the appellant's claim to them is based upon his supposed right to a deed of the property without foreclosure, it is as insubstantial in law as that, and must be denied for like reasons. But after the mortgage was in default, the Title Company was bound to apply for a receiver of the rents, and its failure so to do may be regarded by the appellant as a breach of its duty as the trustee for him of that power. The Title Company was bound to act pursuant to the terms of its guaranty to enforce its right as mortgagee to the rents as agent for the appellant after the mortgage was in default. So long as the Title Company was not itself in default on its guaranty, it would have been entitled to keep the rents received, but, when it defaulted, it would have held them as trustee for the appellant. Yet its failure so to act would be less than enough to deprive Land Estates, Incorporated, were it an independent mortgagor, of its right to the rents, since they were not in fact sequestered by the mortgagee. The Title Company became liable to the appellant for its breach of duty as trustee of the power to sequester the rents, it is true, but more was needed to permit him to reach the actual rents in the hands of the mortgagor. That more has been shown. Land Estates, Incorporated, was the Title Company's dummy as much subject to its control as though the mortgage had been given by an individual mortgagor who was the mere agent of an individual mortgagee who had absolute power to dictate whatever was done. Together they allowed the rents to be received and retained by the mortgagor, and in so doing Land Estates, Incorporated, was but the alter ego of the Title Company in collecting and retaining the rents after default both by the mortgagor and the guarantor. Consequently it follows that Land Estates, Incorporated, should be charged with the same duty to account for the rents received as would its principal, the Title Company, if it had received them as the agent of the appellant. After the Title Company defaulted, all rents collected by the receivers of Land Estates, Incorporated, were therefore received in trust for the appellant, and for so much there should be an accounting. Prudential Life Ins. Co. v. Liberdar Holding Corporation, supra.

Order modified accordingly.